AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Middle District of Alabama

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No. 2:18mj252SRW
A BLACK LG CELL PHONE IN A BLUE CASE IN THE )
CUSTODY OF THE DRUG ENFORCEMENT )
ADMISTRATION, MONTGOMERY RESIDENT OFFICE )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
A BLACK LG CELL PHONE IN A BLUE CASE IN THE CUSTODY OF THE DRUG ENFORCEMENT ADMISTRATION, MONTGOMERY RESIDENT OFFICE.

located in the ___Middle___ District of ___Alabama___, there is now concealed *(identify the person or describe the property to be seized):*
evidence of criminal activity specifically violations of title 21 USC 841(a).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a) | Possession with intent to distribute. |

The application is based on these facts:
See attached affidavit (ATTACHMENT A) incorporated herein by reference and made part of this application.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Doug Walters, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___11/16/2018___

_____
*Judge's signature*

City and state: Montgomery, AL     Susan Russ Walker, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK LG CELL PHONE IN A BLUE CASE IN THE CUSTODY OF THE DRUG ENFORCEMENT ADMISTRATION, MONTGOMERY RESIDENT OFFICE | Case No. 2:18mj252SRW |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Hubert Douglas Walters, Jr., being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—1 electronic devices—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. This is a request for the reissuance of a search warrant previously issued. As set forth below, law enforcement agents were unable to complete the search of said device within the time allotted because of security features on the device. The previous search warrant application was assigned case number 2:18 MJ 240-SRW.

2. I have been employed with the Drug Enforcement Administration (DEA) since August 2016, and I am currently assigned to the Montgomery, Alabama Resident Office. Prior to being hired with DEA, I was employed with the Elmore County, Alabama Sheriff's Department and was so employed for 10 years. During those 10 years, I was assigned to the Montgomery Resident Office ("Montgomery RO") of the New Orleans Division of the DEA, and have been deputized as a Federal Task Force Officer ("TFO") for the past 15 years. I have also been previously employed by the Montgomery, Alabama Police Department and was assigned to the

patrol division for approximately one year and the Tallassee, Alabama Police Department for approximately eight years.

3. As a DEA Special Agent, I have participated in long-term, historical investigations of drug distribution organizations. I have been involved in the debriefing of defendants and others who had knowledge of the distribution and transportation of controlled substances and of the laundering and concealing of proceeds derived from drug dealing. Further, I have supervised or participated in physical surveillance, electronic surveillance, undercover transactions, controlled drug purchases, and the execution of search warrants.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The undersigned submits that the contents of this affidavit and attachments establish probable cause to believe that the said item contains evidence of criminal activity, specifically violations of title 21 USC 841(a).

**IDENTIFICATION OF DEVICE #2 TO BE EXAMINED**

5. The property to be searched is a Black LG cellular telephone with a Blue case in the custody of the Drug Enforcement Administration, hereinafter referred to as "Device #2." Device #2 is currently located at the Montgomery Resident Office in Montgomery, Alabama. The applied-for warrant would authorize the forensic examination of Device #2 for the purpose of identifying electronically stored data described with particularity in Attachment B.

## **PROBABLE CAUSE**

6.  During the week of September 17, 2018, a Chambers County Drug Task Force confidential informant (CS) contacted Agent Stacy Shirey on several occasions. The confidential informant advised Agent Shirey that he/she had been communicating with a white male identified as James LANDERS and arranged the delivery of one kilogram of methamphetamine for September 23, 2018 at 11:00 A.M. in the Oxford, Alabama area. Further, the CS informed Agent Shirey that LANDERS was currently incarcerated at the Riverbend Correctional Facility located in Georgia.

7.  On September 23, 2018, Lt. Shirey arranged several Agents to meet in Oxford at Wal-Mart to cover the deal. After several hours of contact between the CS and Landers, Agent Shirey ended the operation and everyone left the area.

8.  Approximately 30 minutes after the operation was cancelled, the CS was contacted by a Hispanic male from the same correction facility advising him/her that the delivery would still take place and the unknown Hispanic male asked the CS, "Where do they need to deliver to"? At that time, Agent Shirey gave the CS a phone number (520-389-6283 is a Under Cover telephone) and the location for the delivery. The CS then passed the information to LANDERS and the unknown Hispanic male in the correction facility.

9.  After a while, Chambers County DTF Agents received a text message from an unknown individual asking for a delivery address and the Chambers County DTF undercover officer responded back with the address to the Quality Inn in Valley, Alabama.

10. At approximately 5:00 P.M., agents received a phone call from an unknown Hispanic male that stated he would be there in approximately one hour. Shortly after 6:00 P.M.,

3

agents received another call from the unknown Hispanic male stating he was 10 minutes out and he asked what type of vehicle he would be meeting. Agents informed the unknown male to look for a silver Dodge truck, which is driven by Agent Steve Smith of the Chambers County DTF. The Unknown male then stated he would be in a white Toyota Camry. After the call was completed, agents received another call from the unknown male and he stated he would not be a Toyota Camry, but a Gray Ford Explorer with Georgia plates.

11.     Approximately 5 to 10 minutes later, a Gray Ford Explorer with a Georgia License plate entered the Quality Inn and drove through the parking lot. The vehicle continued to travel to end of the parking lot and the Explorer turned into an attached parking lot (Waffle House), where Agent Steve Smith was parked in a Silver Dodge. The Explorer drove by slowly, turned around in the parking lot, and then pulled up beside Agent Smith.

12.     Agent Smith exited his vehicle and the driver of the Explorer let his window down. Agent Smith then ordered the driver to turn off the vehicle and agents took the driver into custody. The driver was identified as Neri Cervantes-Trejo. While taking TREJO into custody, agents observed two cell phones on the front passenger seat (Device #1 and Device #2). The agents did not manipulate the cell phone, but could observe the last text message showing on DEVICE #2 was to the agent, due to the cell phone screen still being active.

13.     Agents then conducted a search of the vehicle. During the search, agents located tools and other items in the rear of the vehicle. Agents removed the items and located a black plastic bag in the driver's rear quarter panel of the vehicle that contained approximately 1 kilogram of methamphetamine. After the methamphetamine was located, Chambers County DTF agents transported Neri Cervantes-TREJO to the Chambers County Jail, where TREJO was booked and held.

14. On October 24, 2018, Special Agent Hubert Walters and Task Force Officer Scott Kendall traveled to the Chambers County Jail to interview TREJO. Prior to the start of the interview, SA Walters provided TREJO with a card that contained Miranda Rights in Spanish. TREJO read the card and stated he understood his rights and could speak some English. During the interview, TREJO advised SA Walters that he traveled to Alabama to fix an air conditioner and did not know anything about the drugs in his vehicle.

15. Further, during the interview, TREJO stated that the 2 telephones (Device #1 and Device #2) belonged to him. TREJO said that he used 1 phone for communication and the other for GPS. After claiming ownership to the telephones, SA Walters asked for consent to search the phone and provided TREJO with a Consent to Search form in Spanish. TREJO stated he understood the form and would give agents consent to search the phones, if the agents would allow him to make a phone call. At that time, SA Walters advised TREJO that agents would just get a search warrant for the devices.

16. Before the interview concluded, SA Walters asked TREJO if he had ever been arrested for drugs before and TREJO stated that he has been arrested once before. SA Walters asked TREJO to give details of that arrest and TREJO stated that he was driving somewhere and got pulled over by Police. TREJO added that during the traffic stop, officers located drugs inside the vehicle, but he had no knowledge of those drugs as well.

17. A check through the National Crime Information Center (NCIC) on TREJO did not produce any record. At the time of this affidavit, SA Walters is working with U.S.Immigration and Customs Enforcement to confirm the identity of TREJO.

18. On October 19, 2018, SA Hubert Walters applied for and was granted a Search Warrant by U.S. Magistrate Judge Susan R. Walker for Device#1 and Device#2. On the same

5

date, Device #1 and Device#2 was searched. Device#1 was analyzed first and the device did not show any data. Device#2 was then analyzed and agents determined that Device#2 has an app lock on the device, therefore agents could not gain access to the apps to analyze the data within the apps. The app lock requires a draw pattern to unlock the app lock. Agent were able to download the SIM card of Device#2, which included videos, pictures, and information about Device#2. Further, it should be noted, agents discovered pictures of TREJO holding firearms. The Search Warrant for Device#1 and Device#2 expired on October 22, 2018 at 10:00 P.M.

19. On October 24, 2018, DEA prepared and sent an Administrative Subpoena to T-Mobile USA asking for subscriber information and the IMEI number for telephone number 678-973-5253, which is assigned to Device#2. On October 27, 2018, DEA received the following response from T-Mobile USA for Device#2: Subscriber for Device#2 is Eric MORALES with an address of 1140 Parcel Road Norcross, GA 30071 and the IMEI# 356233097376906.

## TECHNICAL TERMS

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of Device #2.

b.      Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has

been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

21. Based on my training, experience, and research, I believe that Device #2 has capabilities that allow it to serve as a wireless telephone, digital camera, and GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used Device #2.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on Device #2. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

8

Device #2 was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on Device#2 because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the electronic device was in use. Electronic file systems can record information about the dates that files were created and the sequence in which they were created.

    b.    Forensic evidence on a device can also indicate who has used or controlled Device #2. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic

9

process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the electronic device and the application of knowledge about how the electronic device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to assist in the possession, distribution, and/or trafficking of drugs, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of Device #2 consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of

Device #2 to human inspection in order to determine whether it is evidence described by the warrant.

25. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of Device #2 described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Hubert Douglas Walters, Jr.
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
on November 16, 2018

HONORABLE SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF ALABAMA

## ATTACHMENT A

1.     The property to be searched is a Black LG cellular telephone with a Blue case in the custody of the Drug Enforcement Administration, hereinafter referred to as "Device #2." Device #2 is currently located at the Montgomery Resident Office in Montgomery, Alabama.

This warrant authorizes the forensic examination of Device #2 for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on Device #2 described in Attachment A that relate to violations of Title 21, United States Code, Section, 841, that involve Neri Cervantes-TREJO, including:

   a. communications regarding the possession and/or transfer of controlled substances;

   b. lists of customers and related identifying information;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. all bank records, checks, credit card bills, account information, and other financial records.

   e. any information recording Neri Cervantes-TREJO's schedule or travel from September 17, 2018 to September 23, 2018 (the day of the arrest); and

   f. any photographs of what appear to be controlled substances or related paraphernalia.

2. Evidence of user attribution showing who used or owned Device #2 at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.